**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CLERK
DISTRICT & BANKRUPTCY
COURTS FOR DC

2026 FEB 16 P 8: 11

RECEIVED

| | | |
|---|---|---|
| IN RE NON-PARTY DEPOSITION<br>SUBPOENA | § | |
| | § | |
| | § | |
| LENNY R. JIANG | § | |
| 1765 Greensboro Station Place, Suite 320 | § | |
| Tysons Corner, Virginia 22102 | § | |
| | § | **Case: 1:26−mc−00018** |
| AND | § | **Assigned To : Jackson, Amy Berman** |
| | § | **Assign. Date : 2/16/2026** |
| PARATUS LAW GROUP, PLLC | § | **Description: Misc.** |
| 1765 Greensboro Station Place, Suite 320 | § | |
| Tysons Corner, Virginia 22102 | § | |
| | § | |
| Movants. | § | |
| | § | |

| | | |
|---|---|---|
| SILICONARTS TECHNOLOGY US INC. | § | |
| 7215 Bosque Boulevard, Suite 211 | § | |
| Waco, Texas 76710 | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| NVIDIA CORPORATION, | § | |
| 11001 Lakeline Boulevard, Suite 100 | § | Case No. 1:25-cv-00431-ADA |
| Austin, Texas 78717 | § | |
| | § | |
| AND | § | |
| | § | |
| NVIDIA SINGAPORE PTE. LTD., | § | |
| 6001 Beach Road, #15-01 | § | |
| Golden Mile Tower | § | |
| Singapore 199589 | § | |
| | § | |
| Defendants. | § | |

**NON-PARTIES LENNY R. JIANG AND PARATUS LAW GROUP, PLLC'S**
**MOTION TO QUASH SUBPOENAS AND FOR ENTRY OF A PROTECTIVE ORDER**

RECEIVED
Mailroom

FEB 17 2026

Angela D. Caesar, Clerk of Clerk
U.S. District Court, District of Columbia

### TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND AND SUMMARY OF THE ARGUMENT ............................ 1

III.  LEGAL STANDARD ........................................................................................... 3

IV.  ARGUMENT AND AUTHORITIES .......................................................................... 4

     A.   The Court should quash the deposition subpoenas to Movants. ...................................... 4

         i.   The bulk of the information sought by NVIDIA is protected by the attorney-client privilege. ................................................................................. 4

         ii.  Deposing Movants has little, if any, value. ............................................................... 7

         iii.  The burden on Movants outweighs any likely benefit to NVIDIA. ............................. 8

         iv.  Any relevant, non-privileged information that NVIDIA seeks can be obtained from other more accessible and less burdensome sources. ...................................... 10

     B.   The Court should enter a protective order on the requests for production in the subpoenas to Movants. ................................................................................................ 11

V.   SUMMARY OF THE INFORMATION SOUGHT ............................................................. 12

VI.  CONCLUSION ..................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Coleman v. District of Columbia,*
   284 F.R.D. 16 (D.D.C. 2013)......................................................................................... 3

*Dell Inc. v. DeAcosta,*
   233 F. Supp. 3d 1 (D.D.C. 2017) ............................................................................... 12

*In re Regents of Univ. of Calif.,*
   101 F.3d 1386 (Fed. Cir. 1996) .................................................................................... 9

*In re TQ Delta,*
   No. 1:17-mc-328, 2018 WL 5033756 (D. Del. Oct. 17, 2018).................................... 4, 9, 10, 12

*SiliconArts Technology US Inc. v. NVIDIA Corp. et al.,*
   Case No. 1:25-cv-431-ADA (W.D. Tex.)..................................................................... 1

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.,*
   276 F.R.D. 376 (D.D.C. 2011) .................................................................................... 3, 4, 10

*Sterne, Kessler, Goldstein & Fox PLLC v. Edwards Lifesciences Corp.,*
   No. 1:13-mc-48-ABJ, 2013 WL 12303364, (D.D.C. Apr. 16, 2013)........................... 4, 8, 9, 10

*Wyeth Holdings Corp. v. Sandoz, Inc.,*
   No. 1:09-cv-955, 2012 WL 600715 (D. Del. Feb. 3, 2012)........................................ 7

*Xcentric Ventures, LLC v. Borodkin,*
   934 F. Supp. 2d 1125 (D. Ariz. 2013) ......................................................................... 12

**Statutes / Regulations**

37 C.F.R. § 1.2 ................................................................................................................ 10

**Rules**

Fed. R. Civ. P. 26............................................................................................................. 3, 8

Fed. R. Civ. P. 30............................................................................................................. 12

Fed. R. Civ. P. 45............................................................................................................. 4, 11

## TABLE OF EXHIBITS

| Ex. No. | Description |
| --- | --- |
| 1 | Declaration of Lenny R. Jiang ("Jiang Decl.") |
| 2 | Declaration of Matthew W. Cornelia ("Cornelia Decl.") |
| 3 | NVIDIA's Non-Party Subpoena to Paratus Law Group, PLLC |
| 4 | NVIDIA's Non-Party Subpoena to Lenny R. Jiang |
| 5 | Paratus Law Group, PLLC's Objections to NVIDIA's Non-Party Subpoena |
| 6 | Lenny R. Jiang's Objections to NVIDIA's Non-Party Subpoena |
| 7 | U.S. Patent No. 9,311,739 |
| 8 | U.S. Patent No. 9,965,889 |
| 9 | NVIDIA's Answer and Defenses to Plaintiff's First Amended Complaint |
| 10 | February 10, 2014, Email from L. Matalon (NVIDIA's Counsel) re Subpoenas |

I.    **INTRODUCTION**

NVIDIA Corporation and NVIDIA Singapore Pte. Ltd. ("NVIDIA") served deposition and document subpoenas on non-party law firm Paratus Law Group, PLLC ("Paratus Law Group") and its managing member, non-party Lenny R. Jiang ("Mr. Jiang") (together, "Movants") in connection with a patent lawsuit styled *SiliconArts Technology US Inc. v. NVIDIA Corp. et al.*, Case No. 1:25-cv-431-ADA (W.D. Tex.). *See* Exs. 3, 4. Movants were patent prosecution counsel for the patents asserted in the underlying lawsuit[1] on behalf of the applicants,[2] and Movants continue to provide legal services to the applicants to this day. NVIDIA's subpoenas are exceedingly broad, seeking information that is plainly protected by the attorney-client privilege, and otherwise fishing for "facts" from non-party attorneys that lack first-hand knowledge.

Because the subpoenas seek information protected by the attorney-client privilege, the burden on Movants heavily outweighs any likely benefit to NVIDIA, and any non-privileged information NVIDIA seeks is irrelevant to the claims and defenses in the underlying lawsuit or can be obtained from other sources, Movants respectfully move this Court to quash NVIDIA's deposition subpoenas. Movants also respectfully move this Court for a protective order excusing them from the unduly burdensome task of preparing a privilege log for the attorney-client privileged information withheld by Movants.

II.    **FACTUAL BACKGROUND AND SUMMARY OF THE ARGUMENT**

As patent prosecution counsel for SiliconArts, Inc. and IACF, Movants' communications with their clients are privileged. And, as detailed below, the depositions that NVIDIA purports to

---

[1] The patents asserted against NVIDIA in the underlying lawsuit are U.S. Patent No. 9,311,739 and No. 9,965,889 (together, the "SiliconArts Patents").

[2] The applicants for the SiliconArts Patents—and Movants' clients—were SiliconArts, Inc. and Industry-Academia Cooperation Foundation of Sejong University ("IACF").

seek[3] will necessarily impinge on information that is protected from disclosure by the attorney-client privilege. For example, request for production no. 2 seeks "[a]ll Documents and Communications given to or received from any Named Inventor, including all correspondence, agreements, invention disclosures." *See* Ex. 3 at 8; Ex. 4 at 8. This is, in essence, seeking "all communications between Movants and their clients," and thus plainly calls for privileged information.

Moreover, the vast majority of the non-privileged, relevant information known by Movants about the SiliconArts Patents is reflected in the public record of communications between Movants and the United States Patent and Trademark Office (*i.e.*, the "public file wrapper")—which is available online for free—and therefore can be obtained from sources other than the non-party attorney and law firm here. As such, the burden to Movants from preparing and sitting for a deposition far outweighs any potential benefit.

The requested depositions also seek information that—to the extent not privileged or publicly known—is not relevant to any claims or defenses in the underlying lawsuit. For example, request for production no. 1 seeks "[a]ll Documents and Communications relating to the Asserted Patents." *See* Ex. 3 at 7; Ex. 4 at 7. But the only non-privileged and non-public information in Movants' possession is immaterial, such as automated filing confirmations from the U.S. Patent Office.

After Movants served objections to the subpoenas, the parties met and conferred regarding the information NVIDIA seeks. The meet and confer confirmed Movants' underlying concern—that NVIDIA's subpoenas were little more than an improper fishing expedition. Indeed, counsel

---

[3] For purposes of this Motion, Movants primarily rely upon NVIDIA's requests for production as indicative of the testimony NVIDIA would seek to elicit at a deposition.

for NVIDIA was unable to articulate any specific, relevant, non-privileged subject matter within the scope of the subpoenas that it intended to seek through a deposition of non-parties Mr. Jiang and Paratus Law Group. Rather, NVIDIA vaguely stated that such depositions ***could potentially*** relate to a litany of topics that are moot (e.g., claim construction issues the Court in the underlying lawsuit has already ruled upon), seek information that is publicly available or not relevant to NVIDIA's claims or defenses (e.g., information reflected in the public file wrapper for the SiliconArts patents), or improperly call for expert testimony from a lay witness (e.g., the scope of prior art to the SiliconArts Patents and the knowledge of a person of ordinary skill in the art).

## III.    <u>LEGAL STANDARD</u>

In general, parties may obtain discovery on any non-privileged matter that is relevant to a claim or defense. Fed. R. Civ. P. 26(b)(1). But discovery must be limited when what is sought can be obtained from other, more convenient, less burdensome, or less expensive sources, or when the burden or expense of the discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(i) and (iii). Courts also limit discovery "for good cause" and can "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which can include "forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1).

Deposing an opposing party's attorney is disfavored. *Coleman v. District of Columbia*, 284 F.R.D. 16, 18 (D.D.C. 2013) ("Courts therefore presume that deposing opposing counsel creates an inappropriate burden or hardship, and the burden is on the party seeking the deposition to show otherwise."). Indeed, "even if these depositions were limited to relevant and non-privileged information, [they] may disrupt the effective operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients." *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380-81 (D.D.C. 2011) (citation omitted) ("*Sterne Kessler I*"). Similar burden and privilege concerns "are implicated when the

proposed deponent is former counsel to a party in pending litigation on matters that are plainly at issue in that litigation, even when the proposed deponent is not currently opposing trial counsel." *Id.* at 380.

## IV.    ARGUMENT AND AUTHORITIES

### A.    The Court should quash the deposition subpoenas to Movants.

As detailed below, the deposition subpoenas should be quashed because they seek information protected by the attorney-client privilege, the burden on Movants heavily outweighs any likely benefit to NVIDIA, and any non-privileged information NVIDIA seeks is irrelevant to the claims and defenses in the underlying lawsuit or can be obtained from other more convenient and less burdensome sources. A summary of NVIDIA's requests and the alternative sources for the information it seeks is included in the table below. *See infra*, § V.

### i.    The bulk of the information sought by NVIDIA is protected by the attorney-client privilege.

A court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A). The attorney-client privilege applies to communications between patent prosecution counsel and a client. *See, e.g.*, *Sterne, Kessler, Goldstein & Fox PLLC v. Edwards Lifesciences Corp.*, No. 1:13-mc-48-ABJ, 2013 WL 12303364, at *3-4 (D.D.C. Apr. 16, 2013) ("*Sterne Kessler II*"); *see also In re TQ Delta*, No. 1:17-mc-328, 2018 WL 5033756, at *3 (D. Del. Oct. 17, 2018) ("To seek information about decisions made during patent prosecution is to seek the communications between the attorney and client in determining how best to prosecute the patent. This is a clear example of legal advice intended to be protected by the attorney-client privilege.") (citations omitted).

Here, NVIDIA's subpoenas to Movants plainly call for the disclosure of information protected by the attorney-client privilege. Indeed, using NVIDIA's deposition topics as a litmus

test, it is difficult to imagine what non-privileged information NVIDIA could seek that is not publicly available or irrelevant to the claims and defenses in the underlying litigation. For example, request no. 2 seeks testimony concerning "[a]ll Documents and Communications given to or received from any Named Inventor." *See* Ex. 3 at 8; Ex. 4 at 8. As noted above, this is essentially a request for "all communications between Movants and their client," and thus plainly calls for privileged information.

As another example, request no. 4 seeks testimony about "[a]ll Documents and Communications relating to the invention(s) of the Asserted Patents, including Documents relating to the identification or determination of the inventor(s)." *See* Ex. 3 at 8; Ex. 4 at 8. But the only non-public information that Movants have relating to this topic comes from privileged communications between Movants and their clients. Movants (U.S. counsel) were not personally present for the inventions made years before in Korea, nor even engaged as prosecution counsel at the time.[4] So any information they have regarding the inventions, including the Korean inventors and their respective contributions, would necessarily have been learned from a communication covered by the attorney-client privilege (and in any event, any testimony by Movants would be hearsay since they lack personal knowledge of any underlying facts).

All told, nearly all of the information covered by NVIDIA's subpoenas is protected by the attorney-client privilege. *See* Ex. 3 at 7-9 (Request for Production Nos. 1-9 and 11); Ex. 4 at 7-9 (Request for Production Nos. 1-9 and 11). The lone exception to this—a request for "general

---

[4] The Korean patent application to which the SiliconArts Patents claim priority (KR 10-2009-0046909) was filed in May 2009, meaning the invention took place on or before that date. *See* Ex. 7 ('739 Patent) at 1; Ex. 8 ('889 Patent) at 1. By contrast, the first power of attorney designating Mr. Jiang and his law firm (then called Sherr & Jiang, PLLC) as counsel for applicants in connection with the SiliconArts Patents was filed on October 25, 2013. The firm was renamed to Paratus Law Group, PLLC. Jiang Decl., ¶ 4.

practice, procedures, and/or policies for prosecuting patent applications, including in relation to ensuring compliance with the duties of candor and/or disclosure"—is irrelevant to the claims and defenses in the underlying litigation. *See* Ex. 3 at 9 (Request for Production No. 10); Ex. 4 at 9 (Request for Production No. 10).

The exemplary topics[5] that NVIDIA allegedly seeks to explore with Mr. Jiang in his individual capacity fare no better. Based on NVIDIA's representations during the parties' meet and confer,[6] these example topics are:

1.  Defenses under 35 U.S.C. § 112;

2.  The scope and meaning of the terms used in the claims of the SiliconArts Patents;

3.  Positions taken by the applicant during prosecution of the SiliconArts Patents;

4.  Applicant-admitted prior art;

5.  The scope of what was known in the prior art;

6.  Motivations to combine prior art references; and

7.  The general knowledge and understanding of a person of ordinary skill in the art.

In addition to calling for privileged information, topics 1 and 2 either improperly seek to elicit expert testimony from a lay witness or are moot because the court in the underlying lawsuit already issued its claim construction order (where issues of indefiniteness under § 112 and the "scope and meaning" of the claim terms are determined as a matter of law). Aside from privileged information,

---

[5] While NVIDIA has since attempted to downplay the overbreadth of its subpoenas by focusing on various exemplary categories of allegedly "[n]on-privileged information," NVIDIA's counsel have expressly maintained that the exemplary topics do not "limit[] the scope of our as-served subpoenas." Ex. 10 at 1. Moreover, merely casting the requested information as "non-privileged" does not make it so, and attempting to extract what non-privileged facts an attorney may have learned from his client without revealing the substance of the privileged communications would be a precarious, if not impossible task.

[6] *See* Cornelia Decl., ¶ 5.

topics 3 and 4 call for information that is available through the U.S. Patent Office's public file wrapper for the SiliconArts Patents. And likewise, setting aside privileged information, topics 5–7 improperly seek to elicit expert testimony from a lay witness.

### ii.        Deposing Movants has little, if any, value.

The depositions sought by NVIDIA will result in little, if any, relevant and non-privileged information about the SiliconArts Patents. To begin, any information in Movants' possession regarding the first of the two SiliconArts Patents (the '739 Patent) would be limited.[7] Moreover, much of the purported non-privileged information sought by NVIDIA, such as Movants' knowledge and ***mental impressions*** of the prior art and public disclosures of the patented subject matter, would either be work product, improper lay opinion testimony, speculation, or irrelevant to any of NVIDIA's defenses in the underlying litigation. For example, to the extent NVIDIA seeks Movants' knowledge of the prior art, it is irrelevant because NVIDIA has not pleaded an inequitable conduct defense in the underlying litigation,[8] so Movants' knowledge of the prior art

---

[7] Movants were involved in preparing and submitting the 2016 application that matured into the asserted '889 Patent, but Movants were not involved in preparing and submitting the 2011 application that matured into the asserted '739 Patent (and from which the '889 Patent is a continuation). Rather, as reflected in the public file wrapper for the '739 Patent, the earlier 2011 patent application was submitted by Ronald A. D'Alessandro of Keohane & D'Alessandro PLLC. It was not until October 2013 that Movants were first designated as counsel for SiliconArts, Inc. and IACF in connection with prosecuting the '739 Patent. Jiang Decl., ¶ 4.

[8] At best, NVIDIA pleaded a collage of boilerplate equitable defenses. *See* Ex. 9 at 37, ¶ 215 ("Plaintiff's claims are barred, in whole or in part, by operation of principles of equity, including the doctrines of waiver, acquiescence, laches (e.g., prosecution laches), estoppel, patent misuse, unjust enrichment, constructive trust, setoff, and/or unclean hands."). This barebones pleading falls well short of the heightened standard applicable to an inequitable conduct allegation. *See, e.g., Wyeth Holdings Corp. v. Sandoz, Inc.*, No. 1:09-cv-955, 2012 WL 600715, at *5 (D. Del. Feb. 3, 2012) (inequitable conduct "must be pled in accordance with Rule 9(b), which requires that the circumstances constituting fraud or mistake shall be stated with particularity.") (citations and internal quotes omitted). Thus, even if NVIDIA were to argue that "unclean hands" captured "inequitable conduct," its pleading is patently deficient, so any such defense is not properly before the court in the underlying litigation.

are not relevant. *See Sterne Kessler I*, 276 F.R.D. at 383 ("[A]n inequitable conduct defense is not properly at issue in the [underlying litigation]. The Court will not sanction deposition of counsel in the petitioner's situation on the mere prospect of Kodak being granted leave to amend its pleadings.") (citation omitted); *Sterne Kessler II*, 2013 WL 12303364, at \*5 (same). Because NVIDIA has no inequitable conduct defense, "the proposed discovery of [NVIDIA] is not important." *Sterne Kessler I*, 276 F.R.D. at 383.

In sum, a deposition of Movants will have little benefit because the vast majority of information NVIDIA seeks is protected by the attorney-client privilege or is not relevant to NVIDIA's claims and defenses. The deposition subpoenas to Movants therefore should be quashed because the burden of deposing Movants outweighs any likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

        **iii.**        **The burden on Movants outweighs any likely benefit to NVIDIA.**

Movants represented SiliconArts, Inc. and IACF in connection with prosecuting the SiliconArts Patents, and Movants continue to provide legal services to both SiliconArts, Inc. and IACF. Jiang Decl., ¶ 3. As such, factors that this Court articulated in connection with prior motions to quash subpoenas to prosecution counsel as weighing against a deposition of patent counsel are also applicable here.

First, because Movants' legal relationships with SiliconArts, Inc. and IACF are ongoing, the risk that Movants may be compelled to testify will chill communications between Movants and their clients. Indeed, a deposition of Mr. Jiang or a representative of Paratus Law Group creates the risk that privileged information, such as intellectual property portfolio strategies, for SiliconArts, Inc. and IACF will be divulged. Such a risk inherently chills communications between Movants and their clients, interfering with Movants' ability to gather the necessary information to adequately represent SiliconArts, Inc. and IACF in these ongoing legal matters.

Second, the time needed to prepare for the depositions sought by NVIDIA is significant and will impair Movants' representation of SiliconArts, Inc. and IACF in other matters, as well as their representation of other clients. The burden of preparing for a deposition is particularly high here because (i) the information sought by NVIDIA dates back over 10 years; and (ii) the subject matter for the depositions appears to be exceedingly broad and far-reaching. For instance, it has been nearly 8 years since the last of the two SiliconArts Patents issued in May 2018. The patents in question are among thousands of files that Movants have handled on behalf of clients, and Movants do not recall the particular details of these files. Jiang Decl., ¶ 6. It would be unduly burdensome for Movants to prepare a witness to be able to testify, for example, about "All Documents and Communications relating to the Asserted Patents, all Related Patents, and/or the subject matter described in any Asserted Patent or Related Patent (including all records, files, publications, correspondence, emails, legal instruments, minutes, memoranda, reports, or other Documents)." *See* Ex. 3 at 7.

Third, deposing Mr. Jiang or another representative for Paratus Law Group will necessarily touch on information protected by the attorney-client privilege. Indeed, based on the requests for production in the subpoenas, the vast majority of the information sought is privileged. And, as noted above, the attorney-client privilege applies to patent prosecution counsel. *See, e.g.*, *Sterne, Kessler II*, 2013 WL 12303364, at *3-4; *In re TQ Delta*, 2018 WL 5033756, at *3. The same is true with respect to communications between patent prosecution counsel and parties who share a common legal interest with the patent applicant or patentee. *See In re Regents of Univ. of Calif.*, 101 F.3d 1386, 1391 (Fed. Cir. 1996) (finding that "the joint client doctrine and the community of interest doctrine apply to and protect legal advice and communications" with patent prosecution counsel).

Here, as explained in more detail above (*see supra*, § IV.A.ii), Movants were involved in the prosecution of both SiliconArts Patents. During prosecution, Movants often communicated with their clients about prosecution strategy. Thus, any communication between Movants and their clients about the SiliconArts Patents or about draft communications with the U.S. Patent Office, for example, communications about responding to office actions, draft claim amendments, and other remarks are protected by the attorney-client privilege. Thus, other than the publicly available items in the file wrappers for the SiliconArts Patents, nearly everything known by Movants about the SiliconArts Patents is protected by the attorney-client privilege.

As such, many of the same considerations this Court identified in prior cases for not deposing an opposing party's counsel—including the significant burden of preparing and sitting for a deposition—exist here. *See Sterne Kessler I*, 276 F.R.D. at 380-82; *Sterne Kessler II*, 2013 WL 12303364, at *3-4.

### iv.    Any relevant, non-privileged information that NVIDIA seeks can be obtained from other more accessible and less burdensome sources.

The majority of anything non-privileged and relevant to the SiliconArts patents is contained in the publicly available file wrapper. Indeed, U.S. Patent Office rules mandate that all business with the Patent Office be conducted in writing. *See* 37 C.F.R. § 1.2. As a consequence, everything relevant to patentability of the SiliconArts Patents is (and must be) in their respective file wrappers. *See id.* ("The action of the Patent and Trademark Office will be based exclusively on the written record in the Office."). Because this information is "part of the public record in patent prosecution histories," NVIDIA "do[es] not need this discovery from [Movants]." *In re TQ Delta*, 2018 WL 5033756, at *3.

Moreover, even if this public information was somehow insufficient, NVIDIA can still depose representatives of SiliconArts, Inc. and IACF, the named inventors on the SiliconArts

Patents, or the patent examiners for the SiliconArts Patents. Yet tellingly, NVIDIA has not sought to take the deposition of *any* of these witnesses with first-hand knowledge of the information NVIDIA purports to seek.

Thus, any relevant and non-privileged information NVIDIA may seek is already available in the public file wrapper and through non-attorney witnesses (including witnesses with firsthand personal knowledge of information NVIDIA purports to seek). As such, in addition to the burden outweighing any likely benefit, the deposition subpoenas to Movants should be quashed because the information NVIDIA seeks can be obtained from other more convenient and less burdensome sources. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

**B.    The Court should enter a protective order on the requests for production in the subpoenas to Movants.**

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Notwithstanding this unambiguous mandate, the requests for production contained in NVIDIA's subpoenas to Movants are exceedingly overbroad, calling for "[a]ll Documents and Communications" relating to 11 broad categories. *See* Ex. 3 at 7-9; Ex. 4 at 7-9. Worse, because the subpoenas are directed to a lawyer (Mr. Jiang) and a law firm (Paratus Law Group), and because Movants' provision of patent prosecution legal services relating to the SiliconArts Patents is their only relevant involvement, the vast majority of the information called for by the requests for production is protected by the attorney-client privilege.

As a result, and particularly in view of Movants' lack of relevant, non-privileged, non-public information, the burden of preparing a privilege log is unreasonable and unjustified. In similar circumstances, courts frequently find that requiring a privilege log from a non-party attorney imposes an undue burden and thus hold that no privilege log is required. *See, e.g., Dell*

*Inc. v. DeAcosta*, 233 F. Supp. 3d 1, 3-4 (D.D.C. 2017) ("Such open document requests, served on prior counsel, would impose an undue and disproportionate burden on [prior counsel] to prepare a privilege log of the thousands of documents that [prior counsel] could reasonably be expected to 'possess' . . . but most of which would be protected by the attorney-client privilege or attorney work-product doctrine."); *Xcentric Ventures, LLC v. Borodkin*, 934 F. Supp. 2d 1125, 1147 (D. Ariz. 2013) (explaining that "requiring [non-party lawyer] Borodkin to create a massive privilege log just so [subpoenaing party] Xcentric can obtain the small slice of information that may be relevant and non-privileged places an undue burden on Borodkin"); *In re TQ Delta*, 2018 WL 5033756, at *3 (noting that "the creation of a privilege log would itself be unduly burdensome here" so "the lack of a privilege log will not defeat [non-party lawyer]'s claim of attorney-client privilege").

Movants therefore respectfully request that this Court find that requiring Movants to prepare a privilege log would be unduly burdensome and enter a protective order excusing the need to prepare one.

## V. <u>SUMMARY OF THE INFORMATION SOUGHT</u>

As summarized in the table below, the information sought by NVIDIA[9] impinges on the attorney-client privilege. The table also illustrates non-privileged and less burdensome sources of information are available to NVIDIA.

| No. | Request | Other Source(s) or Privilege/Relevance |
|---|---|---|
| 1 | All Documents and Communications relating to the Asserted Patents, all Related Patents, and/or the subject matter | <u>Other Sources</u>: (1) U.S. Patent Office's public file wrapper for the SiliconArts Patents; (2) SiliconArts, Inc.; (3) the |

---

[9] NVIDIA failed to provide a list of deposition topics or otherwise to describe with reasonable particularity the matters for examination. While not required as to Mr. Jiang, the topics for examination must be described with particularity as to Paratus Law Group. *See* Fed. R. Civ. P. 30(b)(6). For purposes of this summary, however, Movants assume that the topics for examination are co-extensive with the requests for production set forth in the Subpoena.

| No. | Request | Other Source(s) or Privilege/Relevance |
|---|---|---|
| | described in any Asserted Patent or Related Patent (including all records, files, publications, correspondence, emails, legal instruments, minutes, memoranda, reports, or other Documents). | named inventors on the SiliconArts Patents; and (4) patent examiners for "the Asserted Patents" and "all Related Patents." <br><br> Privilege/Relevance: All non-Patent Office correspondence and documents, if any, in Movants' possession are protected by the attorney-client privilege. Movants' mental impressions regarding this topic are not relevant to NVIDIA's claims or defenses. |
| 2 | All Documents and Communications given to or received from any Named Inventor, including all correspondence, agreements, invention disclosures, questionnaires, notes, notebooks, minutes, memoranda, declarations or affidavits, assignments, publications, presentations, and/or Prior Art. | Other Sources: (1) U.S. Patent Office's public file wrapper for the SiliconArts Patents; (2) SiliconArts, Inc.; and (3) the named inventors on the SiliconArts Patents. <br><br> Privilege/Relevance: All communications between Movants and the named inventors (or their representatives), if any, are protected by the attorney-client privilege. |
| 3 | All Documents and Communications given to or received from any Person that owns or owned any interest in the Asserted Patents or Related Patents, including all correspondence, agreements, invention disclosures, questionnaires, notes, notebooks, minutes, memoranda, declarations, assignments, publications, presentations, and/or Prior Art. | Other Sources: (1) U.S. Patent Office's public file wrapper for the SiliconArts Patents; (2) SiliconArts, Inc.; and (3) the named inventors on the SiliconArts Patents. <br><br> Privilege/Relevance: Much of this information is protected by the attorney-client privilege. Communications between Movants and other parties (non-clients) are not relevant to NVIDIA's claims or defenses. |
| 4 | All Documents and Communications relating to the invention(s) of the Asserted Patents, including Documents relating to the identification or determination of the inventor(s) for each of the Asserted Patents, the contribution of each individual to the claimed invention, and Documents relating to the development and conception and/or | Other Sources: (1) U.S. Patent Office's public file wrapper for the SiliconArts Patents; (2) SiliconArts, Inc.; and (3) the named inventors on the SiliconArts Patents. <br><br> Privilege/Relevance: All information in Movants' possession, if any, regarding this topic would have been received by a |

| No. | Request | Other Source(s) or Privilege/Relevance |
|---|---|---|
| | reduction to practice of any of the Asserted Patents. | communication protected by the attorney-client privilege. |
| 5 | All Documents and Communications relating to the first public disclosure of the subject matter of the Asserted Patents and/or any Related Patents (including uses, demonstrations, sales, offer for sale, demonstrations, announcements, advertisements, or publications). | <u>Other Sources</u>: (1) SiliconArts, Inc.; (2) the named inventors on the SiliconArts Patents; and (3) Ronald A. D'Alessandro. <br><br> <u>Privilege/Relevance</u>: All information in Movants' possession, if any, regarding this topic would have been received by a communication protected by the attorney-client privilege. |
| 6 | All Documents and Communications relating to the preparation, filing, and/or prosecution of each of the Asserted Patents and/or Related Patents (including all relating to the decision to seek patent protection for the subject matter of any claim of any Asserted Patent; all relating to any communication, meeting, or contact with the U.S. Patent and Trademark Office; all references, publications, and/or Prior Art cited during the prosecution of each of the Asserted Patents and/or Related Patents). | <u>Other Sources</u>: (1) U.S. Patent Office's public file wrapper for the SiliconArts Patents; (2) SiliconArts, Inc.; and (3) the named inventors on the SiliconArts Patents. <br><br> <u>Privilege/Relevance</u>: All non-Patent Office correspondence or documents in Movants' possession, if any, are protected by the attorney-client privilege. |
| 7 | All Documents and Communications relating to all Prior Art to the Asserted Patents and/or Related Patents, and/or relating to the state of the art at the time of Asserted Patents, whether or not provided to the U.S. Patent Office or any other patent office during prosecution of the Asserted Patents or any Related Patents. | <u>Other Sources</u>: (1) U.S. Patent Office's public file wrapper for the SiliconArts Patents; (2) SiliconArts, Inc.; and (3) the named inventors on the SiliconArts Patents. <br><br> <u>Privilege/Relevance</u>: All non-Patent Office correspondence or documents in Movants' possession, if any, are protected by the attorney-client privilege. Movants' mental impressions regarding this topic are not relevant to NVIDIA's claims or defenses. Moreover, this request calls for expert testimony (e.g., "the state of the art at the time of the Asserted Patents," not that of a lay witness, and is therefore improper. |
| 8 | All Documents and Communications relating to the patentability, validity, enforceability, or scope of any claim of the Asserted Patents and/or Related | <u>Other Sources</u>: (1) U.S. Patent Office's public file wrapper for the SiliconArts Patents; (2) SiliconArts, Inc.; (3) the named inventors on the SiliconArts |

| No. | Request | Other Source(s) or Privilege/Relevance |
|---|---|---|
|  | Patents (including any search for or investigation of any Prior Art or other information; including studies or opinions relating to patentability, enforceability, or scope; and/or any assertion or contention by any Person that any claim is valid, invalid, enforceable, or unenforceable) | Patents; and (4) patent examiners for "the Asserted Patents" and "Related Patents."<br><br>Privilege/Relevance: All non-Patent Office correspondence or documents in Movants' possession, if any, are protected by the attorney-client privilege. Movants' mental impressions regarding this topic are not relevant to NVIDIA's claims or defenses. Moreover, this request calls for expert testimony (e.g., the "scope of any claim of the Asserted Patents," not that of a lay witness, and is therefore improper. |
| 9 | All Documents and Communications relating to the prosecution of any Related Patent in any jurisdiction, (including foreign priority documents; search reports; correspondence with foreign patent offices; opinions of novelty or inventiveness; international filing materials; and/or Documents, references, and/or Prior Art cited by foreign patent offices). | Other Sources: (1) U.S. Patent Office's public file wrapper for the SiliconArts Patents; (2) the public file wrapper for "any Related Patent in any jurisdiction"; (3) SiliconArts, Inc.; (4) the named inventors on the SiliconArts Patents or on "any Related Patent in any jurisdiction"; and (5) patent examiners for "the Asserted Patents" and "any Related Patent in any jurisdiction."<br><br>Privilege/Relevance: All non-Patent Office correspondence and documents, if any, in Movants' possession are protected by the attorney-client privilege. |
| 10 | All Documents and Communications relating to Your general practice, procedures, and/or policies for prosecuting patent applications, including in relation to ensuring compliance with the duties of candor and/or disclosure. | Privilege/Relevance: Any documents or communications relating to this topic, if any, exchanged between Movants and their clients is protected by the attorney-client privilege. Any non-privileged documents or communications in Movants' possession relating to this topic, if any, are not relevant to NVIDIA's claims or defenses. |
| 11 | All Documents and Communications identifying any Persons (including attorney(s) and/or practitioner(s)) involved in the preparation and/or prosecution of any application leading to any Asserted Patent. | Other Sources: (1) U.S. Patent Office's public file wrapper for the SiliconArts Patents; (2) SiliconArts, Inc.; (3) the named inventors on the SiliconArts Patents; and (4) patent examiners for the SiliconArts Patents. |

| No. | Request | Other Source(s) or Privilege/Relevance |
|-----|---------|----------------------------------------|
|     |         | <u>Privilege/Relevance</u>: All information in Movants' possession regarding this topic, if any, exchanged with Movants' client is protected by the attorney-client privilege. Moreover, the information sought through this topic is not relevant to NVIDIA's claims or defenses. |

## VI.    <u>CONCLUSION</u>

The Subpoenas plainly seek information that is protected by the attorney-client privilege, and requiring Mr. Jiang and a representative of Paratus Law Group to prepare and sit for the depositions NVIDIA seeks would subject these non-parties to undue burden. As such, Mr. Jiang and Paratus Law Group respectfully request that the Court quash the Subpoenas.

Dated: February 16, 2026

Respectfully submitted,

*/s/ Jean Ralph Fleurmont*
**Jean Ralph Fleurmont**
(D.D.C. Bar No. 1044791)
**SULLIVAN & TRIGGS, LLP**
200 Massachusetts Avenue, 7th Floor
Washington, D.C. 20001
Tel.: (310) 442-2336
Fax: (310) 451-8303
Email: jrfleurmont@sullivantriggs.com

**Austin C. Teng** (*pro hac forthcoming*)
**WINSTEAD PC**
600 W. 5th Street, Suite 900
Austin, Texas 78701
Tel.: (512) 370-2800
Fax: (512) 370-2850
Email: ateng@winstead.com

**Matthew W. Cornelia** (*pro hac forthcoming*)
**WINSTEAD PC**
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Tel.: (214) 745-5400
Fax: (214) 745-5390
Email: mcornelia@winstead.com

*Attorneys for Movants*
*Lenny R. Jiang and Paratus Law Group, PLLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 16, 2026, a true and correct copy of the foregoing document was served via email and first-class mail on counsel of record for NVIDIA Corporation and NVIDIA Singapore Pte. Ltd. as follows:

Lee J. Matalon
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
lmatalon@desmaraisllp.com

*/s/ Jean Ralph Fleurmont*
Jean Ralph Fleurmont
