**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LENNY R. JIANG, *et al.*,

        Petitioners,

    v.

NVIDIA CORP., *et al.*,

        Respondents.

Case No. 26-mc-18-ABJ-MJS

<u>**MEMORANDUM OPINION AND ORDER**</u>

This proceeding is an offshoot from a patent-infringement matter pending in the U.S. District Court for the Western District of Texas. NVIDIA Corp. and NVIDIA Singapore Pte. Ltd. (together, "NVIDIA")—defendants in the underlying case—served Rule 45 document and deposition subpoenas on Petitioners Paratus Law Group and its managing member, attorney Lenny Jiang, based on their prior role as prosecution counsel for the patents at issue in the Texas case. Petitioners now move to quash the deposition subpoenas entirely. They argue that the depositions would run headlong into the attorney-client privilege and that any non-privileged information would be negligible, irrelevant, and disproportional to the needs of the case. Petitioners also seek a limited protective order that would excuse any obligation to prepare a privilege log in response to the document subpoenas. The matters are fully briefed. After review, the Court will **QUASH** the deposition subpoenas but require Petitioners to prepare a privilege log for any responsive documents withheld under a claim of privilege or work-product protection and to produce any non-privileged documents to NVIDIA. Accordingly, and for the reasons below, Petitioners' motion (ECF No. 1) is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Jiang is the managing member of Paratus Law Group, PLLC, and he previously represented Industry-Academia Cooperation Foundation ("IACF") of Sejong University in prosecuting two patents: U.S. Patent No. 9,311,739 and U.S. Patent No. 9,965,889 (the "Asserted Patents"). (ECF No. 1-1 at 1–4, Pets.' Ex. 1 ("Jiang Decl.") ¶¶ 2–3.)[1] According to Petitioners, the Asserted Patents relate to ray tracing graphics processing units, which are key pieces of hardware for visual effects, video games, and other computer graphics. The underlying inventions for the Asserted Patents date back to at least 2009, whereas Jiang began representing IACF sometime in 2013. (*See* ECF No. 1-1 at 141–57, Pets.' Ex. 7; ECF No. 1-1 at 158–75, Pets.' Ex. 8; Jiang Decl. ¶ 4.) Jiang maintains an attorney-client relationship with both IACF and another past assignee of the Asserted Patents, SiliconArts, Inc., a South Korean business entity. (Jiang Decl. ¶ 3.) As of February 2025 (and presumably through today), the holder of the Asserted Patents was SiliconArts Technology US Inc. ("SAT")—a U.S. business entity that Jiang and Paratus Law do not represent. (ECF No. 8-4, Resps.' Ex. C at 5; ECF No. 8-5, Resps.' Ex. D at 6; ECF No. 8-17, Resps.' Ex. P at 4.)

The subpoenas at the center of this motion spring from a patent-infringement lawsuit that SAT filed against NVIDIA in the Western District of Texas. *See SiliconArts Technology US Inc. v. NVIDIA Corp.*, No. 1:25-cv-431-ADA (W.D. Tex.). In broad strokes, SAT alleges in that case that NVIDIA's products and services infringe on the Asserted Patents, and the parties are midway through discovery. To this point, NVIDIA has reportedly pursued discovery from a range of sources, including the named inventors, SiliconArts, Inc.'s former leadership, and its alleged licensing partners. (*See* ECF Nos. 12-2 to 12-7, Pets.' Exs. 12–17; ECF No. 8 ("Opp'n") at 10.)

---

[1] Page citations are to those assigned by the Court's electronic filing system.

But according to NVIDIA, it has struggled to obtain much relevant discovery because most of the relevant players are outside the United States, beyond the reach of traditional discovery tools.

Jiang's clients are not parties to the Texas litigation, and Jiang and Paratus Law do not represent any of the parties in the Texas litigation. But believing that Jiang and Paratus Law might have discoverable information, NVIDIA served them with document and deposition subpoenas. (ECF No. 1-1 at 9–49, Pets.' Ex. 3; ECF No. 1-1 at 50–90, Pets.' Ex. 4.) The subpoenas seek a broad swath of information from Petitioners, including "documents and communications relating to the Asserted Patents," "documents and communications given to or received from any named inventor" of the Asserted Patents, "documents and communications relating to the … prosecution of each of the Asserted Patents," and more. (*See, e.g.*, ECF No. 1-1 at 68–70 (cleaned up).) In response to the subpoenas, Petitioners served objections and responses. (ECF No. 1-1 at 91–116, Pets.' Ex. 5; ECF No. 1-1 at 117–39, Pets.' Ex. 6.) As to the document subpoenas, they objected on privilege and various other grounds, and took the position that they would not produce non-privileged, responsive documents because they were publicly available. (*See, e.g.*, ECF No. 1-1 at 124–25.) Relevant here, Petitioners did not provide a privilege log in conjunction with their responses. As to the deposition subpoenas, Petitioners likewise interposed various objections, including on privilege grounds. (*See* ECF No. 1-1 at 112–114, 138.)

Following unsuccessful attempts to convince NVIDIA to withdraw—or at least substantially narrow—the subpoenas, Petitioners now move to quash the deposition subpoenas, arguing that they implicate predominantly privileged information and that any discovery into nonprivileged information would be irrelevant, disproportional to the needs of the case, or otherwise improper. (ECF No. 1 ("Mot.") at 5.)[2] Petitioners also seek a limited protective order

---

[2] Petitioners filed in this District as the place "where compliance is required." Fed. R. Civ. P. 45(d)(3)(A).

absolving them from any obligation to prepare a privilege log as to responsive documents being withheld on privilege grounds. NVIDIA opposes. NVIDIA acknowledges that "[m]uch of the information sought by the subpoenas is fundamentally the type of discovery that should have come from SiliconArts [Inc.]" and SAT. (Opp'n at 12.) But NVIDIA disclaims any intent to probe into privileged matters. NVIDIA contends that Jiang (and, by extension, Paratus Law) is one of the only available fact witnesses and says it seeks only "targeted," nonprivileged information. (Opp'n at 6, 14–17.) Judge Amy Berman Jackson referred this matter to the undersigned pursuant to LCvR 72.2 (ECF No. 2), and the motion is fully briefed (*see* ECF No. 12 ("Reply")). The Court held a hearing late last month, and this ruling now follows.

### LEGAL STANDARD

Third-party subpoenas are governed by Federal Rule of Civil Procedure 45. Broadly speaking, "Rule 45 subpoenas may only be used to compel production of information that is discoverable under Rule 26." *Pishevar v. Fusion GPS*, 2025 WL 885115, at *3 (D.D.C. Mar. 21, 2025) (quoting *Breiterman v. U.S. Capitol Police*, 323 F.R.D. 36, 42 (D.D.C. 2017)). Rule 26 contemplates liberal discovery, encompassing "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). But discovery is properly limited where it would be "unreasonably cumulative or duplicative," "can be obtained from some other source that is more convenient, less burdensome, or less expensive," or is otherwise "outside the scope permitted by Rule 26(b)(1)." *See* Fed. R. Civ. P. 26(b)(2)(C).

In the third-party subpoena context, in particular, courts are empowered to quash subpoenas that would, among other things, require "disclosure of privileged or other protected matter" (absent an exception or waiver) or "subject[] a person to undue burden." Fed R. Civ. P. 45(d)(3)(A)(iii)–(iv). These principles extend equally "to both document and testimonial subpoenas." *Watts v.*

*S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007). The party resisting a subpoena bears a "heavy burden" to quash it. *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995); *see also Petruss Media Grp., LLC v. Advantage Sales & Mktg. LLC*, 347 F.R.D. 39, 42 (D.D.C. 2024). "Whether a subpoena imposes an undue burden depends on the specific facts of the case," requiring courts to "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 58 (D.D.C. 2023) (quoting *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017)). Generally, though, "[i]f a subpoena compels disclosure of information that is not properly discoverable, then the burden it imposes, however slight, is necessarily undue." *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014); *see also Pishevar*, 2025 WL 885115, at *5 ("[T]he Court properly considers relevance in evaluating a motion to quash a subpoena.").[3]

## ANALYSIS

Petitioners ask the Court to both quash the deposition subpoenas and grant a protective order excusing any need to create a privilege log for documents withheld from the document subpoenas. The Court takes the requested relief in reverse order.

## I.     Petitioners Must Prepare a Privilege Log and Produce Non-Privileged Documents

As previewed, NVIDIA's document subpoenas seek a wide array of information from Petitioners, virtually all of which stems from their legal representation of IACF and SiliconArts, Inc. in prosecuting the Asserted Patents. The subpoenas seek, for example, "all documents and

---

[3] Under the Federal Rules, courts have discretion to transfer a subpoena-related motion to the issuing court—here, the Western District of Texas—if the target of the subpoena consents to transfer or based on a finding of "exceptional circumstances." *See* Fed. R. Civ. P. 45(f). During the hearing, Petitioners acknowledged they would consent to transfer if this Court saw fit to go that route. Even so, the Court opts to resolve the motion directly in lieu of transfer because it already invested substantial time on the matter and because it fails to see how the issuing court would be any better positioned to resolve the disputes.

communications relating to the patentability, validity, enforceability, or scope of any claim of the Asserted Patents," "all documents and communications given to or received from any person that owns or owned any interest in the Asserted Patents," and "all documents and communications relating to the preparation, filing, and/or prosecution of each of the Asserted Patents." (ECF No. 1-1 at 69–70 (cleaned up).) Petitioners interpret NVIDIA's document requests to seek "the entirety of the attorney-client prosecution files" (Reply at 6), which they estimate would constitute around "700 documents and emails" (Jiang Decl. ¶ 6).

Reading the subpoenas at face value, the Court agrees that much of the requested information is almost certainly protected from disclosure by the attorney-client privilege—which, as both sides acknowledge, extends to confidential communications between patent prosecution counsel and client. *See Sterne, Kessler, Goldstein & Fox P.L.L.C. v. Edwards Lifesciences Corp.*, 2013 WL 12303364, at *3 (D.D.C. Apr. 16, 2013) (citing *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 745–46 (Fed. Cir. 1987)); *see also, e.g.*, *In re TQ Delta*, 2018 WL 5033756, at *3 (D. Del. Oct. 17, 2018). Indeed, NVIDIA does not disagree that many of Jiang's communications with his clients are likely to be privileged (Opp'n at 7), and NVIDIA disclaims any pursuit of privileged information. Rather, NVIDIA insists Petitioners must adhere to the typical requirement of preparing a privilege log so that NVIDIA can fairly evaluate the propriety of Petitioners' privilege claims. (Opp'n at 28.) In response, Petitioners maintain that the universe of materials responsive to the subpoenas—again, approximately 700 documents in total—are "predominantly" privileged and cover over a decade of representation, rendering the creation of a privilege log unduly burdensome. (Reply at 7–8.)

As a general rule, a party withholding otherwise responsive documents based on a privilege—including the attorney-client privilege—must provide a contemporaneous privilege log

that describes the materials "without revealing information itself privileged or protected," but with sufficient specificity to "enable other parties to assess the [privilege] claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Rule 45 imposes a companion obligation in the subpoena context. *See* Fed. R. Civ. P. 45(e)(2)(A)(ii). The failure to do so often operates as a waiver of the privilege. *See, e.g.*, *Wye Oak Tech., Inc. v. Republic of Iraq*, 2018 WL 4473506, at *3 (D.D.C. Sept. 18, 2018) ("[D]efendants have waived any assertion of attorney-client privilege or attorney work-product doctrine by not providing a privilege log."); *Walker v. Ctr. for Food Safety*, 667 F. Supp. 2d 133, 138 (D.D.C. 2009) (similar in Rule 45 subpoena context). That said, several cases in this District have concluded that where "a discovery request demands production of an attorney's records in connection with representation of a client, invocation of the protections of the attorney-client privilege … may be effective without requiring a detailed privilege log." *Hulley Enters. Ltd. v. Baker Botts LLP*, 286 F. Supp. 3d 1, 7–8 (D.D.C. 2017) (collecting cases). "Otherwise," those cases reason, "any objection to the scope of a discovery demand would be rendered moot because interposing that objection would trigger the very burdensome obligation to prepare a privilege log that the objection would be intended to avoid." *Id.*; *see also, e.g.*, *Dell Inc. v. Decosta*, 233 F. Supp. 3d 1, 3–4 (D.D.C. 2017) (similar). Petitioners invoke that line of cases here, arguing that the mere creation of a privilege log, in and of itself, would impose an undue burden given the acknowledged fact that much of the materials being requested—discovery from a lawyer and a law firm—would implicate privileged material. The Court is not unsympathetic to that position, but it concludes that Petitioners cannot escape their privilege-log obligations on the particular facts here.

The cases in this District that have endorsed a rule excusing the need for a privilege log in these circumstances have typically emphasized the vast and sweeping volume of materials that would otherwise need to be logged. *See, e.g.*, *Hulley Enters.*, 286 F. Supp. 3d at 7 (describing a

"massive effort" that would be required to catalog "privileged documents generated by over a decade of representing" legal clients); *Dell*, 233 F. Supp. 3d at 3–4 (highlighting the "thousands of documents" generated over "a decade of [legal] representation"). And the same holds true for the cases Petitioners cite from outside this jurisdiction. *See Xcentric Ventures, LLC v. Borodkin*, 934 F. Supp. 2d 1125, 1147 (D. Ariz. 2013) (declining to require the creation of a "massive privilege log"); *In re TQ Delta*, 2018 WL 5033756, at \*2–3 (same, in context of subpoena seeking information about "38 asserted patents" and seemingly hundreds more "possibly related patents" and companion materials, "spanning a possible twenty years of documents and communications"). By contrast, where the volume of privileged records is more modest, courts have still required the production of a privilege log by a lawyer or law firm. *See, e.g.*, *Food Delivery Holding 12 S.a.r.l. v. DeWitty & Assocs. CHTD*, 538 F. Supp. 3d 21, 31 (D.D.C. 2021) (declining to hold that the creation of a privilege log would create an undue burden where the universe of potentially responsive records "consist[ed] of roughly three folders, with a few hundred documents in each.").

Here, Petitioners report that the total universe of responsive materials—albeit developed through a legal relationship spanning about a decade—appears to be around 700 documents, and Petitioners acknowledge that not all those documents are subject to a claim of privilege. (Reply at 7–8.) In some ways, then, this case comes close to straddling the line between the category of cases that would excuse the production of a privilege log in this context and the category that would not—*i.e.*, records spanning years, on the one hand, but still numbering in a relatively manageable range, on the other. On balance, though, the Court concludes that the circumstances here fall a bit more comfortably in the latter camp. Even if the overall client relationship at issue spanned years, the volume of responsive materials subject to a potential claim of privilege—around 700, largely

8

focused on the prosecution of two specific patents—is manageable enough to allow for the creation of a privilege log in a reasonable time and with reasonable effort.

More, as additional background, the Court finds it notable that NVIDIA did not embark on this particular discovery path without reason. As NVIDIA highlighted during the hearing, in responding to NVIDIA's discovery requests in the underlying litigation, SAT—the plaintiff in the Texas infringement suit—stated that "[t]he patent attorneys and law firms identified in the prosecution file histories of the Asserted Patents" (*i.e.*, Jiang and his law firm) "may also have information regarding at least the constructive reduction to practice of the claimed inventions." (ECF No. 18-1 at 24.) In other words, SAT—represented by the same lawyers representing Petitioners here, no less—directed NVIDIA to chase at least some discovery from Petitioners. Petitioners try to downplay this fact, rejoining that the potentially discoverable material referenced in SAT's discovery responses is limited and would be captured by other publicly available records. Though this may be true, the fact remains that NVIDIA was pointed this way by SAT, and NVIDIA is pursuing discovery from Petitioners in keeping with that direction. Adhering to the general requirement of a privilege log under these circumstances will further NVIDIA's ability to fairly vet the prospect, as SAT suggested, that Petitioners may have discoverable information.

Accordingly, the Court will deny Petitioners' request for a protective order that would obviate the need to prepare a privilege log. Petitioners will be required to produce an appropriate privilege log in response to the document subpoenas within fourteen (14) days, and Petitioners should likewise produce any non-privileged, responsive documents by that time.[4]

---

[4] As the Court previewed during the hearing, Petitioners miss the mark in objecting to production of even *non-privileged* documents because they are "publicly available" or otherwise "equally available" to NVIDIA. This objection is generally insufficient to resist discovery. *See, e.g.*, *LLC SPC Stileks v. Republic of Moldova*, 2023 WL 2610501, at *4 (D.D.C. Mar. 23, 2023) (collecting cases). And even recognizing the need to be especially "sensitive to the costs imposed on third parties" in the Rule 45 context, *see Watts*, 482 F.3d at 509, the claimed burden imposed on Petitioners in producing what the Court understands to be a

## II.      The Court Will Quash the Deposition Subpoenas

The deposition subpoenas are another story. Attorney depositions are "generally disfavored in federal courts." *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380 (D.D.C. 2011) (collecting cases). Among other concerns, such depositions "may chill attorney-client communications, even if limited to relevant, non-privileged topics, because of the risk of inadvertently disclosing privileged information." *Mannina v. District of Columbia*, 334 F.R.D. 336, 347 (D.D.C. 2020). Relatedly, "counsel depositions carry the substantial potential of spawning litigation over collateral issues related to assertion of privilege, scope, and relevancy, that only end up imposing additional pretrial delays and costs on both parties and burdens on the courts to resolve work-product and privilege objections." *Eastman Kodak*, 276 F.R.D. at 382; *see also, e.g.*, *Bassett v. Tempur Retail Stores, LLC*, 2024 WL 3416221, at *2 (D. Mass. July 15, 2024) (similar). Courts permitting attorney depositions generally do so when the scope of the deposition will be focused on targeted, *nonprivileged* information that cannot be gleaned from other sources. *See, e.g.*, *Dell Inc.*, 233 F. Supp. 3d at 4 (allowing deposition of former patent counsel focused on "licensing" activity, including "correspondence or dealings with non-client outside parties").[5]

Somewhat understandably, then, that is the primary rationale NVIDIA invokes here: NVIDIA disclaims any intent to pursue privileged information from Petitioners and claims to seek "discovery of only nonprivileged facts." (Opp'n at 7.) But what "nonprivileged facts" exactly? NVIDIA identifies a few broad categories: facts concerning their defenses of (A) inequitable

---

relatively limited swath of non-privileged documents to NVIDIA in response to the document subpoenas is not undue, especially considering that Petitioners' counsel steered NVIDIA in this direction through the discovery responses they served on behalf of SAT in the underlying case.

[5] Counsel depositions might also be appropriate where some exception to the attorney-client privilege applies, for instance, or where the privilege was waived. The Court does not purport to comprehensively detail any and all possible scenarios along these lines because they are not at issue here.

conduct, (B) prosecution history estoppel, and (C) other possible "Section 112 defenses"; (D) facts related to licensing of the Asserted Patents; and (E) facts surrounding the issue of inventorship of the Asserted Patents. (*See* Opp'n at 13, 17–18, 20.) The Court addresses each theory in turn, concluding that none serves as a hook to seek relevant discovery from Petitioners in light of the substantial and acknowledged privilege issues at play here, including because NVIDIA can pursue—and, indeed, is pursuing—some of the same discovery elsewhere.[6]

### A.  Inequitable Conduct

To start, NVIDIA says it seeks information from Petitioners related to the issue of "inequitable conduct." (Opp'n at 18.) "Inequitable conduct is an equitable defense to patent infringement" that requires an accused infringer to show that the patentee "misrepresented or omitted material information with the specific intent to deceive the PTO." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285, 1287 (Fed. Cir. 2011). "[C]ourts have generally permitted depositions of prior patent prosecution counsel" for purposes of discovery into an inequitable conduct defense, at least where the requesting party has actually pled that defense. *Eastman Kodak*, 276 F.R.D. at 382–83 (collecting cases); *see also Iyer v. Nexus Pharms., Inc.*, 2023 WL 12211370, at *1 (D.D.C. Mar. 6, 2023) ("[T]he pleading of an inequitable conduct defense or counterclaim counsels against quashing a deposition subpoena served on an attorney who prosecuted a patent[.]"). This is because "the prosecuting attorney's mental impressions" can

---

[6] The parties debate whether the Court should apply a heightened standard used when considering whether to allow a deposition of "opposing counsel"—a disagreement that seems to center on the so-called *Shelton* factors, which would require NVIDIA to show that "(1) no other means exist to obtain the information other than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). The Court need not decide that issue because even without applying the *Shelton* factors, it concludes that the subpoenas should be quashed under a traditional Rule 26 analysis. *See Mannina*, 334 F.R.D. at 340 (sidestepping question of "whether to adopt the more restrictive *Shelton* test" because the proposed depositions "exceed[ed] the permissible bounds of discovery under Rule 26").

sometimes be "crucial to any claim of inequitable conduct in a patent infringement action." *Eastman Kodak*, 276 F.R.D. at 383 (citation omitted).

The problem for NVIDIA here, though, is that it would be seeking discovery on an inequitable conduct defense that does not exist. As Petitioners point out—and as NVIDIA concedes—NVIDIA has not pled an inequitable conduct defense in the underlying litigation. And courts routinely reject the pursuit of inequitable-conduct discovery in the absence of a live inequitable-conduct defense. *See, e.g.*, *Eastman Kodak*, 276 F.R.D. at 383; *Asetek Danmark A/S v. CoolIT Sys. Inc.*, 2021 WL 4699170, at *2 (N.D. Cal. Oct. 8, 2021); *In re Insogna*, 2020 WL 85487, at *10–11 (S.D. Cal. Jan. 3, 2020); *Denniston v. Abiomed, Inc.*, 2019 WL 6827487, at *1–2 (W.D.N.Y. Dec. 13, 2019); *Edwards Lifesciences*, 2013 WL 12303364, at *5. This Court sees no reason to take a different approach here. Tellingly, when pressed at the hearing to identify cases where courts authorized depositions of patent prosecution counsel for purposes of inequitable-conduct discovery where no inequitable-conduct defense had been pled, NVIDIA's counsel could not point to a single such case. And in its briefing, the only case NVIDIA cites in support of this argument simply proves the point because the defendants in that case had pled an inequitable conduct defense, unlike here. In fact, that court made a point to distinguish cases going the other way on precisely this basis. *See aaiPharma, Inc. v. Kremers Urb. Dev. Co.*, 361 F. Supp. 2d 770, 774 n.3 (N.D. Ill. 2005). Further, insofar as NVIDIA argues that the discovery should be permitted anyway because it still has a chance to amend its pleadings or otherwise assert an inequitable conduct defense in the future (Opp'n at 18), that argument fares no better. The key question is whether the defense is live, not whether it might someday become so. *See Eastman Kodak*, 276 F.R.D. at 383–84 (rejecting similar argument even where a motion to amend to assert inequitable conduct defense was actively pending). Otherwise, the Court would essentially be sanctioning "a

12

fishing expedition for new claims, defenses, or surprise facts." *Asetek*, 2021 WL 4699170, at *2. As things stand, this asserted discovery angle is simply not germane to "the issues at stake in the action." Fed. R. Civ. P. 26(b)(1).

**B.    Prosecution History Estoppel**

NVIDIA separately purports to seek discovery concerning the defense of prosecution history estoppel. (Opp'n at 17–18.) This doctrine contemplates "that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002). As that definition itself indicates, any support for that defense is generally "restricted to the evidence in the prosecution history record." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366–67 (Fed. Cir. 2003). Framed appropriately, it is unclear how any testimony from Petitioners would be relevant to the issue of prosecution history estoppel, and NVIDIA never articulates any concrete theory otherwise. As Petitioners emphasize (Reply at 14), other courts have declined to permit attorney depositions into this subject on this same basis. *See, e.g.*, *Asetek*, 2021 WL 4699170, at *2 (agreeing that the inquiry of prosecution history estoppel is "based solely on the USPTO's written record"); *In re Insogna*, 2020 WL 85487, at *6 ("The prosecution histories speak for themselves"). This Court reaches the same result. There is no relevant basis—certainly not one NVIDIA has cogently articulated—to seek testimony from Petitioners on this subject.

**C.    Section 112 Defenses**

NVIDIA relatedly proffers that the depositions may be relevant to information concerning other "Section 112" defenses (*see* 35 U.S.C. § 112), including enablement and written description. (Opp'n at 17.) But similar hurdles for NVIDIA exist here, too, because it fails to show how testimony from prior patent prosecution counsel would be relevant to those defenses. Both

implicate objective standards evaluated from the perspective of an ordinary person "skilled in the art" of the invention. *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993) (enablement); *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (written description). NVIDIA does not argue that Jiang or anyone else at Paratus Law is skilled in the art underlying the Asserted Patents, so there is no obviously plausible basis for NVIDIA to seek discovery from Petitioners into those defenses. And even if they were skilled in the art, Petitioners' testimony would be no more illuminating on these defenses than would be testimony from others with the same expertise. In short, none of the Section 112 defenses identified by NVIDIA would seemingly benefit from information that Jiang or Paratus Law might possess—much less uniquely so.

### D.      Licensing

Next, NVIDIA says it would question Petitioners about patent-licensing efforts for the Asserted Patents undertaken on behalf of their clients, given that any communications Petitioners may have had with third parties related to licensing would not be privileged. (Opp'n at 20.) This angle, at least in theory, could have some legs. As NVIDIA correctly identifies, there is precedent in this District to allow targeted counsel depositions on this subject. *See, e.g.*, *Dell*, 233 F. Supp. 3d at 4 (agreeing that deposition of "licensing counsel" would be proper as to "testimony concerning their correspondence or dealings with non-client outside parties"). But in *Dell*, there was no question about the lawyers' role as "longtime licensing counsel," *id.* at 2, whereas NVIDIA seems to simply be guessing that Petitioners performed that work here. More specifically, NVIDIA posits that because Jiang continued to provide "legal services" to SiliconArts, Inc. after the Asserted Patents issued, and because Paratus Law's website generally advertises services related to "technology licensing" and "negotiation" (*See* ECF No. 8-15, Resps.' Ex. N at 4), it is plausible to believe Petitioners performed licensing-related work in connection with the Asserted Patents.

14

(Opp'n at 20–21.) Without a more concrete basis to expect that Petitioners would have relevant discovery on that point, and given the serious privilege concerns implicated here, this syllogism is far too speculative to justify a deposition of patent prosecution counsel.[7] Moreover, and as Petitioners highlight, NVIDIA is simultaneously pursuing licensing-related discovery from other third-party sources, including several potential licensing partners for the Asserted Patents. (Reply at 18–19; *see also* ECF Nos. 12-2 to 12-4, Pets.' Exs. 12–14.) During the hearing, NVIDIA's counsel confirmed that it was actively engaged in discussions with at least two of those potential sources concerning NVIDIA's document and deposition subpoenas to them on these subjects. NVIDIA's acknowledged efforts to pursue that discovery from other viable sources provides another reason to forestall a deposition of Petitioners on the same subject. *Eastman Kodak*, 276 F.R.D. at 385 ("There are other more appropriate sources for that information rather than deposition of the petitioner."); *see also, e.g.*, *Bales v. Quest USA Corp.*, 2019 WL 1454696, at *1 (D. Colo. Apr. 2, 2019) (quashing subpoena issued to prior patent prosecution counsel because, among other reasons, there were "other means to obtain [the identified] information").

### E.    Inventorship

Finally, NVIDIA asserts that it would seek discovery from Petitioners concerning the origins of the Asserted Patents and their inventors. (Opp'n at 13.) But as Petitioners appropriately rejoin, it is unclear how Petitioners would have any direct, firsthand knowledge about those subjects. The Asserted Patents arise from inventions dating back to at least 2009, whereas

---

[7] NVIDIA might be on better footing if it had first attempted to subpoena documents from Petitioners concerning third-party licensing activity related to the Asserted Patents. In that scenario—assuming Petitioners produced responsive materials along these lines—then NVIDIA would have a far more credible hook for seeking follow-up discovery through a targeted deposition. But NVIDIA's document subpoenas to Petitioners did not seek any licensing-related materials, as NVIDIA's counsel conceded during the hearing. Assuming NVIDIA were truly after this discovery all along, that omission is surprising. The other possibility, of course, is that NVIDIA's licensing-focused theory was more of an afterthought when Petitioners challenged the subpoenas. In any case, the current record on this issue is unhelpful to NVIDIA.

Petitioners only became involved in 2013 when they began representing IACF and SiliconArts, Inc. (*Compare* ECF No. 1-1 at 141–57, Pets.' Ex. 7, *and* ECF No. 1-1 at 158–75, Pets.' Ex. 8, *with* Jiang Decl. ¶ 4.) So neither Jiang nor anyone else at Paratus Law can fairly be characterized as a "percipient fact witness" on these matters. (Opp'n at 17.) Rather, the Court agrees with Petitioners that any information they might possess on the subject of inventorship would have been acquired through communications with their clients in the course of the legal relationship, which would seem to implicate colorable privilege objections as to any potential disclosure. Moreover, during the hearing, NVIDIA's counsel confirmed that one of the named inventors, Woo-Chan Park, recently agreed to participate in a deposition. So, once again, NVIDIA's ability and plans to pursue an alternative—and seemingly far better—source of information on these topics provides another basis to reject NVIDIA's efforts to depose Petitioners in pursuit of that information.

*     *     *

To sum up, Petitioners have shown that NVIDIA's deposition subpoenas carry a serious risk of disclosing privileged information, even if only inadvertently, and NVIDIA's various theories for pursuing non-privileged deposition discovery come up short in avoiding that resulting burden or otherwise establishing a proper basis for the testimony they seek. NVIDIA acknowledges that much of the potentially relevant information held by Petitioners would be protected by the attorney-client privilege, and NVIDIA disclaims any intent to invade that privilege. But Petitioners show that the various categories of potentially non-privileged testimony that NVIDIA ostensibly seeks are either not relevant to the issues at stake in the underlying litigation or are available elsewhere. NVIDIA, as noted, can still pursue certain discovery from alternative sources, even if some of its broader discovery efforts have been frustrated by an

16

inability to serve potentially relevant witnesses and the limited processes available to conduct discovery from entities and individuals located outside the United States.

## CONCLUSION

For these reasons, Petitioners' motion (ECF No. 1) is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** the motion insofar as it will **QUASH** the deposition subpoenas issued to Petitioners. *See* Fed. R. Civ. P. 45(d)(3). The Court **DENIES** the motion insofar as Petitioners seek a protective order that would excuse their obligation to prepare a privilege log. Within fourteen (14) days, Petitioners shall serve on NVIDIA an appropriate privilege log that sufficiently describes any documents being withheld in response to the document subpoenas, *see* Fed. R. Civ. P. 45(e)(2)(A), and Petitioners should additionally produce any non-privileged documents that are responsive to the document subpoenas within that same timeframe.

**SO ORDERED**.

Dated: April 9, 2026

_____
MATTHEW J. SHARBAUGH
United States Magistrate Judge